Argued February 2; affirmed February 23, 1938

## DONAHUE ET AL. *v.* BURDEN ET AL.

(76 P. (2d) 470)

Department 2.

*H. E. Slattery*, of Eugene (Slattery & Slattery, of Eugene, on the brief), for appellants.

*Lawrence T. Harris*, of Eugene (Harris & Bryson, of Eugene, on the brief), for respondents.

LUSK, J. On September 14, 1934, the defendants and respondents, C. F. Hyde and Nellie F. Hyde, conveyed to the plaintiffs and appellants, S. T. Donahue and Mary Ellen Donahue, by warranty deed, for an expressed consideration of $10, the following described real property:

Beginning at the Southeast corner of the Northwest Quarter of Section 7, Township 18 South, Range 3 West of the Willamette Meridian, running thence West 9.25 chains, thence North 5.94 chains, thence East 9.25 chains, thence South 5.94 chains to the place of be-

ginning, containing 5.5 acres of land, more or less, in Lane County, Oregon.

On May 4, 1937, the plaintiffs commenced this suit alleging in substance that prior to the execution of the deed, when the parties were negotiating, the defendants pointed out to them the southwest corner and the west and north boundaries of the land which the defendants were proposing to sell, and that the land conveyed by the deed does not extend as far west or as far north as the lines pointed out by the defendants, and that the plaintiffs relied on these representations in making the purchase. In brief, their claim is, that a strip approximately ten feet in width on the west and another strip approximately fifteen feet in width on the north were included in the boundaries pointed out to them but were not included in the deed, and that they are entitled to a decree either reforming the deed or quieting title in them to the disputed land.

The defendants denied these charges in their answer, and a trial resulted in findings for the defendants and a decree of dismissal of the suit, from which this appeal has been taken.

The issue presented for decision is purely one of fact and may be disposed of without extended discussion or minute analysis of the testimony. If the facts alleged in the plaintiffs' complaint have been established by a preponderance of the evidence, the plaintiffs are entitled to relief; otherwise they are not.

It appears from the evidence that the deeded land comprises the south five and one-half acres of a tract of sixteen acres, the record title to which stood in the name of the defendants, C. F. Hyde and Nellie F. Hyde, his wife. The Hydes had entered into a contract of sale of the entire tract to the defendant, W. J. Burden,

and it was Burden who conducted the preliminary negotiations with the plaintiff, S. T. Donahue, for the sale of a portion of the tract. A parcel of land known as the Wills tract lies to the west of the land in controversy. Donahue testified that when they were looking at the property together Burden pointed out to him a cedar post which marks the southeast corner of the Wills tract as the southwest corner of the property Donahue was buying. This post was located approximately ten feet west of the actual southwest corner of the property conveyed by the deed. In the northern portion of the tract conveyed to the plaintiffs there is an apple orchard, and Donahue testified that Burden represented to him that the north line ran midway between the fourth and fifth rows of trees, whereas, in fact, the north line described in the deed was found on a survey to run through the boles of the fourth row of trees or approximately fifteen feet south of the line which Donahue claims Burden indicated to him. Mrs. Donahue corroborated her husband.

Burden, on the other hand, denied that he told Donahue that the north line ran between the fourth and fifth rows of trees in the apple orchard. He testified that at first he and Donahue discussed the sale of six acres, and that six acres would come to Wills' north line and run straight across the defendants' property; that he stepped off the distance from the six-acre line and ascertained that the north line of the tract in question would be about three feet south of the fourth row of trees, and told Donahue that while he did not know accurately he thought that would be about the location. With reference to the west boundary, Burden testified that he told Donahue he did not know the exact location of the line between the Hyde property and the Wills property, but supposed that the two properties joined.

He also testified that he did not show Donahue the southeast corner of the Wills property.

The undisputed fact is that the defendants' property did not join the Wills tract, and there is no evidence in the record as to the ownership of the ten-foot strip between the deeded property and the Wills property. The Hydes did not own this strip, therefore, could not convey it, and as to this branch of the case plaintiffs are clearly not entitled to relief in this suit.

This apart, however, we are of the opinion that the plaintiffs are not entitled to the relief which they seek. Whatever difficulties there might be in determining where the truth of the matter lies, if the decision depended solely on the direct testimony respecting the statements alleged to have been made by Burden, the circumstances are very persuasive against the plaintiffs' claim. There is testimony of a convincing character that the plaintiffs were not particularly concerned with boundaries, but, rather, were buying five and one-half acres of land. It is shown that Donahue had $1,200 to invest in the property, and that he so informed both Burden and Hyde. Donahue and Burden at first discussed the purchase of six acres at $200 per acre. This was a lesser price than Burden was obligated to pay under his contract with the Hydes, but he was willing to sell at this price in order to reduce his interest payments. Donahue, however, wanted a right of way from the county road over land belonging to one Davis, lying to the south and west of the property he was proposing to buy, and in the deal, as finally concluded, the sale of five and one-half acres instead of six was agreed upon. The sum of $1,100 was applied on the purchase price of the land and $100 was paid to Davis for the right of way. Obviously, this reduction in acreage was made because, after paying for the

right of way, Donahue's resources would not permit him to buy six acres at Burden's price, but were sufficient to buy five and one-half acres. Thus, without doubt the land was sold to Donahue for $200 an acre. The deed, which was submitted to the plaintiff's attorney for examination and approval before its delivery to them, recites that the land contains five and one-half acres more or less, and describes a tract 5.4935 acres in area. Consequently, the plaintiffs got what they paid for.

Moreover, while it might not be unreasonable to believe that Burden pointed out to Donahue the southwest corner of the tract, it is improbable that he would claim to know with any degree of accuracy the location of the north line in question. As to the former, he might have assumed, as he said he did, that the south line ran west to Wills' east line, but there was no north line at the time of the alleged representation and no monuments or markers of any description to indicate where such a line would lie. The tract to be sold was simply being carved out of a larger undivided tract, the major portion of which lay north of the property in controversy, and all of which was owned by the defendants, Hydes. Neither the description in the deed which the Hydes received from their grantors, nor in any other instrument of conveyance in the chain of title, contained any call identical with the second and fourth calls in the deed, which designates the east and west lines. It is apparent that the abstractor who prepared the deed, knowing that the property to be conveyed was the south five and one-half acres of the entire tract, fixed the east and west lines at 5.94 chains or 392 feet, in order to describe a parcel having five and one-half acres. No survey had been made for the purpose of determining where the north line would be located and

nothing short of a survey could accurately determine its location. The south line was fenced and Donahue had been on the land and knew where the south line was, and he was in practically as good a position as Burden to guess about the location of the north line. It is not like the case of a man pointing out to another the boundaries of his land. All that Burden did or could have done was to attempt to approximate within the boundaries a line which had never been established. All that Donahue can reasonably be supposed to have asked Burden to do was to give his best judgment as to the probable location of the north line of the five and one-half acre tract.

We have examined the testimony with care, and have given due weight to the evidence of improvements made by plaintiffs and their cultivation of the ground and care of the trees in the disputed strip at the north. The whole of the evidence, we think, stamps as unreasonable the claim of the plaintiffs that they bought this property relying on boundaries pointed out to them by the defendants. They have not only failed to sustain the burden of proof but the record amply justifies the findings of the trial judge that "the plaintiffs actually bought the land described in the deed," and "that the plaintiffs purchased 5.5 acres of land from the defendants, and said land was conveyed to the plaintiffs by the deed."

It results that the decree of the circuit court must be affirmed. Respondents will recover their costs.

BEAN, C. J., and RAND and BAILEY, JJ., concur.